BANK v. WALTER.

(*Nashville.*    January 20,    1900.)

1. BILLS AND NOTES.    *Release of surety by extension of time.*

A surety on a note is released where the holder of the note contracts with the principal maker, without the surety's assent, to extend the time of payment for a definite period beyond the maturity of the note, upon consideration of payment, in advance, of interest thereon for the period of extension. (*Post, pp. 12–15.*)

Case cited: Bank v. McClung, 9 Hum., 98.

2. SAME.    *Same.*

And, in such case, the contract for extension is valid and fatal to the surety's liability on the note, although the interest stipulated and paid for the extension period was at a usurious rate. The payment of the legal interest afforded a sufficient consideration without the aid of the usury. The usury alone was illegal, and, being separable, did not vitiate the entire consideration. (*Post, pp. 15–22.*)

Code construed: §§ 3492, 3493, 3499 (S.); §§ 2700, 2701, 2707 (M. & V.); §§ 1943, 1944 (T. & S.).

Cases cited and approved: Apperson v. Cross, 5 Heis., 481; Tillford v. Summers, 2 Yer., 255; Reed v. Moore, Meigs, 80; Boyers v. Boddie, 3 Hum., 666; Isler v. Brunson, 6 Hum., 277; Bowers v. Douglass, 2 Head, 376; McFerrin v. White, 6 Cold., 499; Ward v. Brandon, 1 Heis., 490; Jackson v. Collins, 2 Heis., 491; Chaffin v. Bank, 7 Heis., 502; Stevenson v. Landis, 14 Lea, 433.

Cited and distinguished: Wilson v. Langford, 5 Hum., 320; Howell v. Sevier, 1 Lea, 360; McKamey v. McNabb, 97 Tenn., 238.

FROM RUTHERFORD.

Appeal from Chancery Court of Rutherford County. W. S. BEARDEN, Ch.

---

Bank *v.* Walter.

---

PALMER & RIDLEY for Bank.

McLEMORE & RICHARDSON and JOHN A. PITTS for Walter.

BEARD, J. The suit is upon two notes for $988.33 each, dated March 21, 1896, due at sixty days, made by defendant and one Vaughn Hartman, now deceased, payable to the complainant bank.

The defendant was surety, and his defense is that the bank and the principal debtor entered into an agreement, upon valuable consideration, for an extension of time upon the notes, without his consent, which operated to release him.

The Chancellor decreed in favor of the bank, and the defendant appealed. The Court of Chancery Appeals affirmed the Chancellor's decree, and the defendant has appealed to this Court.

The Court of Chancery Appeals has found all the facts in accordance with the defendant's contention, and these facts are stated in substance, and briefly:

1. The defendant, Walter, was only surety upon the notes, and the bank knew this fact.

2. The defendant had refused to renew the notes with the principal, and the bank also knew this fact.

3. With this knowledge, the bank, on June 8, 1896, in order, as the cashier testified, "to keep the notes from lying in the bank past due, charged Vaughn Hartman's deposit or account in the bank

with the necessary amount of interest, and extended the time for the payment of the notes sixty days," indorsing the extension on the back of the notes, as follows: "May 20, 23, 1896. Int. pd., and time extended to July 25, 1896. Bell, Teller." This arrangement was made known to and approved by Hartman, the principal debtor, on, or a few days after, June 10, 1896, and all this was done without the knowledge or consent of defendant, the surety.

4. The rate of interest thus paid in advance by Hartman to the bank was 8 per cent. per annum for the agreed period of extension of sixty days.

Upon these facts it is now insisted by the defendant that the decree pronounced by that Court cannot be sustained. That the payment of lawful interest in advance is a sufficient consideration for an extension of time, or agreement for delay, is well settled, if not by the entire, at least by the great weight of authority. Mr. Daniel, in his work on Neg. Inst., Sec. 1317, says that "the actual payment of interest in advance for the extended period is a sufficient consideration upon which to base an agreement of extension." . . . In words very similar, the same proposition is stated in Randolph on Commercial Paper, Vol. 2, Sec. 965. These authors cite many cases which support their text.

It is clear that an agreement for forbearance,

resting on such payment, binding as it does the holder of commercial paper, if made by him with the principal or party whose primary duty it is to take care of it, without the knowledge or consent of the surety, will discharge the latter. The same authorities referred to as supporting the first also sustain this proposition.

Not only will this be the result of an express agreement, but one will often be implied from the transactions between the creditor and the principal debtor so as to relieve the surety who has no knowledge of these transactions. "It is not necessary," said this Court, in *Union Bank* v. *McClung*, 9 Hum., 98, "that there should be a positive agreement to accept of the proposed terms of a contract; an implied one will do, and this implication is fairly inferable where the parties proceed and act upon the proposed terms (as in this case) in the manner they would have done provided there had been an express agreement to that effect. The reason why the holder of a note or bill shall not contract for delay with the maker without discharging the indorser is because such contract is to the detriment of the indorser. To hold that he may give such delay upon an implied agreement, and receive in advance his accruing interest for such delay, without releasing the indorsers, would be to deprive them of a principle of security guaranteed to them by law, and this upon a mere quibble."

In *Gardner* v. *Gardner,* 23 S. C., 588, the Court said: "Interest for money is defined to be 'the compensation which is paid by the borrower to the lender, or by the debtor to the creditor, for its use.'" Bou. Law Dict., 652. Hence, when a creditor receives interest on his debt up to a certain period he receives from his creditor compensation for the use of the money by the debtor up to that period, and until that period arrives he cannot demand payment of the money, for, by receiving compensation for its use by the debtor for the specified time, he has, by necessary implication, agreed that the debtor shall have the use of the money, for which he has paid for the specified time. . . . There can be no question of intention, for parties are presumed to intend the necessary legal effect of their acts."

It being, beyond doubt, that an advance payment of lawful interest for a fixed period will bind the creditor to his agreement for delay, and so release the nonassenting surety, the question arises, does the fact that the advance payment is at a rate in excess of the lawful rate vitiate it altogether, and make of no effect, as a supporting consideration, that portion which is within the lawful rate?

This is the question presented in this record, the answer to which, by the Court of Chancery Appeals, is now made the subject of complaint. That Court held that the payment of eight per

cent. as a consideration, was usurious, and that the agreement for delay resting on this consideration was not an enforceable or valid contract, and therefore did not serve to release the surety.

Was the eight per cent. paid *usury*, or did it simply *embrace* usury? We think both our statutes and decisions very clearly answer this question. Interest and usury are defined by Shannon's Code, as follows:

"Sec. 3492. Interest is the compensation which may be demanded by the lender from the borrower, or the creditor from the debtor, for the use of money.

"Sec. 3493. The amount of said compensation shall be at the rate of six dollars for the use of one hundred dollars for one year, and every excess over that rate is usury."

In other words, the compensation up to 6 per cent. per annum is interest; any excess is usury, and the two things are entirely distinct.

This distinction is fully recognized by the decisions of this Court. It has been enforced by every case which has sanctioned a recovery of principal and interest (6 per cent.) upon a contract or obligation affected with usury not appearing upon its face. Of course, where the usury appears upon the face of the contract or obligation, no suit can be maintained upon it for any purpose, upon the familiar rule that no action can

be grounded upon an obligation that shows upon its face that it was made in violation of law.

The following are among the numerous cases in this State which recognize and enforce the distinctness and essential separateness of interest and usury —always allowing the former where the latter does not appear by the contract, and never allowing the latter in whatever way it is properly made to appear: *Tillford* v. *Summers,* 2 Yer., 255; *Reed* v. *Moore,* Meigs, 80; *Boyers* v. *Boddie,* 3 Hum., 666; *Isler* v. *Branson,* 6 Hum., 277; *Bowers* v. *Douglass,* 2 Head; *Causey* v. *Yates,* 8 Hum., 605; *McFerrin* v. *White,* 6 Cold., 499; *Ward* v. *Brandon,* 1 Heis., 490; *Jackson* v. *Collins,* 2 Heis., 491; *Apperson* v. *Cross,* 5 Heis., 481; *Chafin* v. *Bank,* 7 Heis., 502; *Stevenson* v. *Landis,* 14 Lea, 433, 438.

In the last case the Court says: "The law is well settled in this State that if the usury does not appear upon the face of the contract, it is valid to the extent of the money loaned and lawful interest, and voidable only as to the usurious excess, and to this extent the Courts enforce the contract." Code (Shannon's), Sec. 3499.

In the present case no usury is apparent on the face of the paper. The indorsement is "Int. pd., and time extended to July 25, 1896. Bell, Teller." Neither the amount of interest, nor the rate, is stated. These were disclosed by allegation and proof. The contract for extension seemed, in

20 P—2

every respect, lawful. Without more, every Court would have enforced it by the release of the non-concurring surety. To avoid this result the complainant was compelled to divulge that there was more than six per cent. taken as a consideration. If the notes themselves had embraced eight per cent. without disclosing it in their face, the makers, when sued, would not have been able to avoid them as usurious contracts, but only to the extent of the excess over six per cent. That excess alone would have been usury; the balance, including principal and legal interest, would have been recoverable. This is clearly so. Then, upon what ground can it be maintained that the contract for delay is unenforceable, because based upon a payment of interest that was only usurious to the extent of the excess over the legal rate? The consideration was not usurious; it simply embraced usury. But, at the same time, it embraced lawful interest, and to that extent was a valuable consideration for the postponement.

This distinction is recognized in *Apperson* v. *Cross,* 5 Heis., 481. In that case Cross had signed two notes of $1,793.50 each, as surety for Hurd, Marcum & Wilson, to Apperson & Co., on May 29, 1860, due at four and eight months, and these notes were delivered to Apperson & Co. as collateral security for certain advances made by them to the principals. After the maturity of these notes, and without the consent of Cross, the

surety, the principal debtors made settlement with Apperson & Co., and executed to them another note for $4,600, due June 1, 1861, covering the entire indebtedness of the makers, including the previous notes on which Cross was surety, and embracing more than six per cent. interest, but the usury did not appear in the face of the new note. It was held that the effect of the transaction was to extend the entire debt of the makers to the maturity of the last note, although Apperson & Co. still retained the first notes, and to discharge Cross, the surety. This Court said: "It is immaterial whether the interest received into the note was legal or usurious unless the illegality appeared on the face of the note. The note was not, therefore, made void."

In the case at bar the entire amount of advance interest paid for the extension was $27.67, three-fourths of which was lawful, and only the excess of one-fourth was usury. If, instead of paying this in cash, the debtor had executed his note to the bank for that sum, and failing to pay, had been sued, it is evident that he could only have avoided it to the extent of the usury; as to the balance, the bank, under our statutes and decisions, would have secured a judgment. This could only be upon the ground that the three-fourths thus recovered, was, to that amount, a valuable consideration for the note. If this be true, it must be that the same proportion of the

payment was legal, and a sufficient consideration for the extension. And if a note had been given for this sum of $27.67, as supposed, we then would have a case similar to *Apperson* v. *Cross, supra.* The payment and the note are controlled by the same principle. In the one case the note is lawful in part and unlawful in part, as is equally the payment. In the one the excess is avoided altogether; in the other it goes to the credits of the principal debt. But in both there is enough left to constitute a legal consideration for the delay, and in either the agreement is sufficient to relieve the surety.

But the Court of Chancery Appeals rests its conclusion upon *Wilson* v. *Langford,* 5 Hum., 320; *Howell* v. *Sevier,* 1 Lea, 360, and *McKamy* v. *McNabb,* 97 Tenn., 238. An examination of these cases, however, will show that they do not warrant this conclusion. In each case the agreement for delay rested upon a consideration entirely usurious, and therefore wholly unlawful.

In *Wilson* v. *Langford,* after the bill single fell due, the principal debtor, as a consideration for an extension of time, executed to the holder his separate bill single for $6\frac{1}{2}$ per cent. as additional interest upon the principal bill single during the time of the stay.

To the claim of the nonassenting surety that he was thereby discharged, the Court said: "The agreement . . . for delay which will entitle the

sureties to be discharged . . . must be . . . . one which imposes upon the creditor a legal obstacle for the time to the prosecution of an action upon the original security. . . . But the agreement set out in the bill was not valid and binding; on the contrary, it was unlawful and void. It was not binding on either party."

In *Howell* v. *Sevier,* the creditor agreed to an extension of time upon a due note in consideration of the principal debtor paying therefor "thirty dollars in addition to the pricipal and interest of the note." The case of *Wilson* v. *Langford, supra,* was directlv in point, and it was held that this wholly unlawful consideration for the agreement deprived the surety of availing himself of the rule of equitable discharge.

In *McKamy* v. *McNabb,* the note matured August 1, 1889. On that day McNabb paid the interest due to date. At the same time the holder agreed to an extension for a year, upon the payment of thirty-six dollars, in addition to the six per cent. interest which the note bore. In the opinion in the case, Wilkes, Justice, said upon the authority of the two preceding cases: "Delay granted or promised upon a usurious consideration is not based upon a valid, enforceable contract, and will not serve to release the sureties."

It is evident that these seveal cases give no support to the contention of complainant, and offer

no impediment to what we deem a proper determination of this controversy. For the reasons stated the decree of the Court of Chancery Appeals is reversed, and the bill of the complainant is dismissed with all costs.